Gary M. Klinger (*pro hac vice*)
**MILBERG PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
gklinger@milberg.com

**EMERY | REDDY PC**
M. Anderson Berry, Esq. (*pro hac vice*)
Gregory Haroutunian, Esq. (*pro hac vice*)
**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
916.823.6955 (Tel)
206.441.9711 (Fax)
anderson@emeryreddy.com
gregory@emeryreddy.com

*Interim Co-Lead Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

|  |  |
|---|---|
| In re: Eureka Casino Breach Litigation | Case No. 2:23-cv-00276-CDS-NJK <br><br> **NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

TO THIS HONORABLE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Plaintiffs William Houghton, Andrew Figura, Michael Oldham, and Kristin Andrew ("Plaintiffs"), individually and on behalf of all others similarly situated, will and hereby do move this Court, under Federal Rule of Civil Procedure 23, for an order granting preliminary

approval of the proposed class action settlement on the terms and conditions set forth in the Class Settlement Agreement and Release ("Agreement"), a copy of which is attached as **Exhibit 1** to the memorandum supporting this motion.

Plaintiffs further move the Court for the following order:

1.    Certifying the Settlement Class for settlement purposes;

2.    Appointing Plaintiffs William Houghton, Andrew Figura, Michael Oldham, and Kristin Andrew as Class Representatives for the Settlement Class;

3.    Appointing Gary Klinger of Milberg PLLC and M. Anderson Berry of Emery Reddy PC as Settlement Class Counsel;

4.    Appointing Angeion Group LLC ("Angeion") as the Claims Administrator;

5.    Approving the proposed notice to the Settlement Class, including the Claim Form, Long Notice, and Short Notice, attached to the Settlement Agreement as **Exhibits A through C**, respectively;

6.    Directing notice to be made to the Settlement Class as described in the Agreement;

7.    Preliminarily approving the settlement subject to final review by the Court;

8.    Establishing deadlines for Settlement Class Members to submit an exclusion request from the settlement and to submit objections to the settlement;

9.    Setting a Final Approval Hearing.

Counsel for Defendant has indicated that Defendant does not oppose the requested relief.

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of Gary M. Klinger and all exhibits attached thereto, all other documents filed in support of this motion, the papers and pleadings on file in this action, Defendant's lack of opposition to the requested relief, and upon such other and further evidence as may be offered at the time of the hearing.

Dated: December 19, 2025                   Respectfully Submitted,

                                           */s/Gary M. Klinger*
                                           Gary M. Klinger (*pro hac vice*)
                                           **MILBERG PLLC**
                                           227 W. Monroe Street, Suite 2100
                                           Chicago, IL 60606
                                           gklinger@milberg.com

                                           M. Anderson Berry, Esq. (*pro hac vice*)
                                           Gregory Haroutunian, Esq. (*pro hac vice*)
                                           **EMERY | REDDY, PC**
                                           600 Stewart Street, Suite 1100
                                           Seattle, WA 98101
                                           916.823.6955 (Tel)
                                           206.441.9711 (Fax)
                                           *anderson@emeryreddy.com*
                                           *gregory@emeryreddy.com*

                                           *Interim Co-Lead Counsel for Plaintiffs*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. vi

I.    INTRODUCTION ..................................................................................................... 1

II.   FACTUAL BACKGROUND ...................................................................................... 1

    A.   Plaintiffs' Claims ............................................................................................... 1

    B.   Procedural History ............................................................................................. 2

    C.   Plaintiffs' Claims ............................................................................................... 2

    D.   Discovery and Investigation ............................................................................... 2

    E.   Settlement Negotiations ..................................................................................... 3

III.  THE SETTLEMENT .................................................................................................. 5

    A.   The Class ........................................................................................................... 5

    B.   The Benefits to Settlement Class Members ........................................................ 5

    C.   Proposed Notice Administration ........................................................................ 6

    D.   Attorneys' Fees and Expenses ........................................................................... 6

    E.   Service Awards to Named Plaintiffs ................................................................... 7

    F.   Release .............................................................................................................. 7

IV.   ARGUMENT ............................................................................................................. 7

    A.   The Settlement Merits Preliminary Approval ..................................................... 7

        1.   Legal Standard ........................................................................................... 7

        2.   The Strength of Plaintiffs' Case ................................................................. 9

        3.   Risk, Expense, Complexity, and Likely Duration of Further Litigation ....... 10

        4.   Relief Offered in Settlement ...................................................................... 11

        5.   Arm's Length, Non-Collusive, Negotiated Resolution ................................ 11

        6.   Experience and Views of Counsel and Adequate Representation of the Settlement Class ...... 12

        7.   The Settlement Has No Obvious Deficiencies ............................................. 13

        8.   The Proposed Method of Distributing Relief and Processing Claims Is Adequate ........ 13

9.    The Agreement Treats Settlement Class Members Equally ...................................... 14

B.    The Settlement Class Should Be Certified......................................................................14

1.    Legal Standard .............................................................................................. 14

2.    Plaintiffs' Claims Satisfy the Rule 23 Requirements for Certification.................................... 14

a.    The Settlement Class Is Ascertainable.............................................................. 14

b.    The Settlement Class Is Numerous .................................................................. 15

c.    There Are Common Questions of Law and Fact .................................................... 15

d.    Plaintiffs' Claims Are Typical ........................................................................ 16

e.    Plaintiffs and Settlement Class Counsel Are Adequate Representatives........................... 16

f.    The Settlement Class Also Meets the Rule 23(b)(3) Requirements ................................ 17

i.    Predominance Is Satisfied............................................................................. 17

ii.    Class Treatment Is Superior.......................................................................... 18

V.    CONCLUSION.................................................................................................. 19

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>                                                                                              <u>Page(s)</u>

3    *Adoma v. Univ. of Phoenix, Inc.*,
        913 F.Supp.2d 964 (E.D. Cal. 2012)..................................................................10, 12
4

5    *Amchem Prods. v. Windsor*,
        521 U.S. 591 (1997)..........................................................................................17, 18
6
     *Barbosa v. Cargill Meat Sols. Corp.*,
7        297 F.R.D. 431 (E.D. Cal. 2013) ......................................................................11, 12

8    *Briseno v. ConAgra Foods, Inc.*,
        944 F.3d  (9th Cir. 2017) ........................................................................................14
9

10   *Eisen v. Carlisle & Jacquelin*,
        417 U.S. 156 (1974)................................................................................................14
11

12   *Ellis v. Costco Wholesale Corp.*,
        657 F.3d 970 (9th Cir. 2011) ..................................................................................16
13   *Gamble v. Boyd Gaming Corp.*,
        No. 2:13-cv-01009-JCM-PAL, 2016 WL 3693743 (D. Nev. July 11, 2016) ..........8
14

15   *Hanlon v. Chrysler Corp.*,
        150 F.3d 1011 (9th Cir. 1998) ....................................................................... passim
16

17   *Hanon v. Dataproducts Corp.*,
        976 F.2d 497 (9th Cir. 1992) ..................................................................................16
18
     *Harris v. Palm Springs Alpine Estates, Inc.*,
19       329 F.2d 909 (9th Cir. 1964) ..................................................................................15

20   *Hester v. Vision Airlines, Inc.*,
        No. 2:09-cv-00117, 2009 WL 4893185 (D. Nev. Dec. 16, 2009) ...........................17
21

22   *In re Mego Fin. Corp. Sec. Litig.*,
        213 F.3d 454 (9th Cir. 2000) ....................................................................................7
23

24   *In re Wal-Mart Wage & Hour Emp't Practices Litig.*,
        No. 2:06-cv-00225-PMP-PAL, 2008 WL 3179315 (D. Nev. June 20, 2008) .........14
25   *In re Wells Fargo Home Mortg.*,
        571 F.3d 953 (9th Cir. 2009) ..................................................................................18
26

27

28

*Kristensen v. Credit Payment Servs.*,
    12 F. Supp. 3d 1292 (D. Nev. 2014) ........................................................................................14

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ....................................................................................8, 11, 12

*Local Joint Executive Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001) ................................................................................................17

*Mora v. Cal West Ag Services, Inc.*,
    No. 1:15-cv-01490-LJO-EPG, 2019 WL 2084725 (E.D. Cal. 2019) ....................................13

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ..............................................................................10, 11, 12

*Officers for Justice v. Civil Service Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ......................................................................................9, 11, 12

*Pauley v. CF Entm't*,
    No. 2:13-CV-08011-RGK-CW, 2020 WL 5809953 (C.D. Cal. July 23, 2020) ..................7, 8

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000) ..................................................................................................7

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ..................................................................................................11

*Santoro v. Aargon Agency, Inc.*,
    252 F.R.D. 675 (D. Nev. 2008) ..............................................................................................16

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ............................................................................................14, 16

*United States v. Armour & Co.*,
    402 U.S. 673 (1971) ................................................................................................................10

*Utility Reform Project v. Bonneville Power Admin.*,
    869 F.2d 437 (9th Cir. 1989) ....................................................................................................8

*Van Lith v. iHeartMedia + Entm't, Inc.*,
    No. 1:16-CV-00066-SKO, 2017 WL 1064662 (E.D. Cal. Mar. 20, 2017) ........................9, 10, 12

*Yahoo Mail Litig.*,
    13-CV-4980, 2016 WL 4474612 (N.D. Cal. Aug. 25, 2016) ....................................................7

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................................................15

*Wolin v. Jaguar Land Rover N. Am. LLC,*
   617 F.3d 1168 (9th Cir. 2010) ..............................................................18

*Wren v. RGIS Inventory Specialists,*
   No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ....................11

**<u>Statutes</u>**

Cal. Bus. & Prof. Code §§ 17200 ...........................................................2

Nev. Rev. Stat. § 41.600 ...................................................................2

**<u>Rules</u>**

Fed. R. Civ. P. 23 ......................................................................5, 8

Fed. R. Civ. P. 23(a) .................................................................5, 14

Fed. R. Civ. P. 23(a)(1) ................................................................15

Fed. R. Civ. P. 23(a)(2) ................................................................15

Fed. R. Civ. P. 23(a)(3) ................................................................16

Fed. R. Civ. P. 23(a)(4) ................................................................16

Fed. R. Civ. P. 23(b)(3) ........................................................5, 14, 17, 18

Fed. R. Civ. P. 23(e) ...................................................................1, 7

**<u>Other Authorities</u>**

4 Herbert B. Newberg, Newberg on Class Actions § 11.25 ..................................8

Manual for Complex Litigation (Fourth)
   (Fed. Judicial Center 2004)............................................................8

Newberg on Class Actions § 13:13 (5th ed. 2014) .......................................13

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiffs William Houghton, Andrew Figura, Michael Oldham, and Kristin Andrew ("Plaintiffs"), individually and on behalf of all others similarly situated, seek preliminary approval of a proposed class action data beach settlement with Defendant Rancho Mesquite Casino, Inc. dba Eureka Casino Hotel ("Eureka" or "Defendant" and together with Plaintiffs, "Settling Parties") that provides significant monetary relief in the form of a $1 million non-reversionary common fund. As will be shown, the settlement satisfies all criteria for preliminary approval per Federal Rule of Civil Procedure 23(e). The settlement was reached with the assistance of two experienced mediators – Bennett G. Picker, Esq. of the Stradley Ronon law firm and Bruce Friedman, Esq. of JAMS, after extensive investigation, motions practice, discovery, and arm's-length negotiations. Accordingly, Plaintiffs respectfully request that the Court preliminarily approve the settlement, certify the Settlement Class, approve the proposed Claim Form and Notices, and set a final approval hearing.

## II.    FACTUAL BACKGROUND

### A.    Plaintiffs' Claims

This consolidated action arises from the security incident experienced by Eureka on or around November 9-13, 2022 during which unauthorized third parties gained access to Eureka's system and exfiltrated personally identifiable information ("Private Information") belonging to approximately 229,410 Class Members (the "Data Security Incident"). Declaration of Gary M. Klinger ("Klinger Decl."), attached hereto as Exhibit 2, ¶ 27. The Private Information included, but was not limited to full names, Social Security Numbers, or driver's license numbers. Additional sensitive data may be involved, including financial account numbers for current or former employees and customers. *Id.*

After discovering the Data Incident, Defendant notified approximately 229,410 individuals of the Data Security Incident. Eureka offered individuals who were impacted by the Data Security Incident one year of membership of Experian's IdentityWorks™ Credit 3B. Individuals, including Plaintiffs, were

mailed notices of the Data Security Incident on or around February 16, 2023 (with 1,737 individuals being sent notice on or about December 9, 2022). *Id*. ¶ 28

### B. Procedural History

Between February and March 2023, Plaintiffs filed four separate putative class action complaints against Eureka in the District of Nevada arising out of the Data Security Incident. Those actions were styled as: *William Houghton v. Rancho Mesquite Casino, Inc. dba Eureka Casino Hotel*, Case No. 2:23-cv-00276 (D. Nev.); *Michael Oldham v. Rancho Mesquite Casino, Inc. dba Eureka Casino Hotel*, Case No. 2:23-cv-00304 (D. Nev.); *Kristin Andrew v. Rancho Mesquite Casino, Inc. dba Eureka Casino Hotel*, Case No. 2:23-cv-00333 (D. Nev.); and *Andrew Figura v. Rancho Mesquite Casino, Inc. dba Eureka Casino Hotel*, Case No. 2:23-cv-00413 (D. Nev.). Klinger Decl. ¶ 29.

On March 24, 2023, the Court entered an Order consolidating *William Houghton v. Rancho Mesquite Casino, Inc. dba Eureka Casino Hotel*, Case No. 2:23-cv-00276 (D. Nev.); *Michael Oldham v. Rancho Mesquite Casino, Inc. dba Eureka Casino Hotel*, Case No. 2:23-cv-00304 (D. Nev.); and *Kristin Andrew v. Rancho Mesquite Casino, Inc. dba Eureka Casino Hotel*, Case No. 2:23-cv-00333 (D. Nev.) (ECF 23). On April 10, 2023, the Court entered an Order consolidating *Andrew Figura v. Rancho Mesquite Casino, Inc. dba Eureka Casino Hotel*, Case No. 2:23-cv-00413 (D. Nev.) (ECF 28) with the previously consolidated cases. *Id*. ¶ 30.

### C. Plaintiffs' Claims

In the Consolidated Complaint, Plaintiffs assert the following claims against Defendant for Negligence; Breach of Implied Contract; Negligence Per Se; Unjust Enrichment; Violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq.; Violation of the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code §§ 1798.100, et seq.; Violation of the California Customer Records Act ("CCRA"), Cal. Civ. Code §§ 1798.80, et seq.; and for Declaratory Judgment arising from the Data Security Incident. Klinger Decl. ¶ 31.

### D. Discovery and Investigation

After the filing of the Consolidated Complaint, Defendant filed a motion to dismiss. ECF 41. That

motion was fully briefed, and ultimately granted in part and denied in part by the Court. ECF 53. After resolution of Defendant's motion to dismiss, the Parties prepared to engage in formal discovery and mutual exchange of information, negotiating a protective order. Klinger Decl. ¶ 33. Plaintiffs served interrogatories and requests for the production of documents, to which Defendant responded. *Id*. On the eve of further discovery, the Parties agreed to mediate this case. Id. ¶ 34. In advance of mediation, the Parties engaged in additional, informal discovery including information regarding Eureka's PII storage systems, policies and procedures regarding the safeguarding of PII in Eureka's possession, custody, or control, information regarding the Plaintiffs' information that was potentially affected by the Data Security Incident. *Id*. The Parties also prepared and exchanged formal mediation statements. Through this informal discovery leading up to mediation, the Plaintiffs gained a thorough understanding of each party's information and the strengths and weaknesses of the claims and defenses in this matter, Class Counsel was able to evaluate the probability of class certification, success on the merits, and Eureka's monetary exposure for the claims. Klinger Decl. ¶ 35.

### E.    Settlement Negotiations

The Parties engaged in two separate private mediations in an effort to resolve this Action. Klinger Decl. ¶ 36. First, in May 2023, the parties engaged in a day-long mediation session with Bruce Friedman, Esq., a highly sought after private mediation of data breach class actions. *Id*. The mediation involved extensive negotiations, discussions and considerations of the case by each party. The Parties went into mediation willing to explore a potential settlement for the dispute, but each was prepared to litigate their claims and defenses through trial and appeal if no settlement could be reached. *Id*. After an all-day, arm's-length mediation, the Parties were unable to reach an agreement to resolve all claims arising from or related to the Data Security Incident. *Id*.

After the Court issued its decision on Defendant's motion to dismiss, the parties continued to discuss potential settlement of the case. Klinger Decl. ¶ 38. On September 19, 2025, the parties engaged in a day-long private mediation session with Rodney A. Max. Esq., a highly experienced private mediator of data breach class actions. *Id*. In advance of and during the session, the parties explored potential

settlement terms and structures, but were unable to reach agreement on all settlement terms. Subsequent to the September mediation session, continued negotiations (with the continuing assistance of Mr. Max) were ultimately fruitful, and led to this Settlement. *Id.*

Class Counsel has conducted a thorough investigation into the facts of this case. Plaintiffs believe the claims asserted in the Litigation, as set forth in the Amended Consolidated Class Action Complaint, have merit. Plaintiffs and Proposed Settlement Class Counsel recognize and acknowledge, however, the expense and length of continued proceedings necessary to prosecute the Litigation against Eureka through motion practice, trial, and potential appeals. They have also considered the uncertain outcome and risk of further litigation, as well as the difficulties and delays inherent in such litigation, especially in complex class actions. Proposed Settlement Class Counsel are highly experienced in class action litigation and very knowledgeable regarding the relevant claims, remedies, and defenses at issue generally in such litigation and in this Litigation. They have determined that the settlement set forth in this Settlement Agreement is fair, reasonable, and adequate, and in the best interests of the Settlement Class, in light of all known facts and circumstances, the risk of significant delay, the defenses that could be asserted by Eureka both to certification and on the merits, trial risk, and appellate risk. *Id.* at ¶ 38.

Plaintiffs and Class Counsel, considering the above factors, believe that the settlement confers substantial benefits upon the Settlement Class, and that it is an excellent result for the Class. *Id.* at ¶ 26, Exhibit 1 (Settlement Agreement).

Eureka denies each and all of the claims and contentions alleged against it in the Litigation. Eureka denies all charges of wrongdoing or liability as alleged, or which could be alleged, in the Litigation. Nonetheless, Eureka has concluded that further conduct of the Litigation would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Settlement Agreement. Eureka has considered the uncertainty and risks inherent in any litigation. Eureka has, therefore, determined that it is desirable and beneficial that the Litigation be settled in the manner and upon the terms and conditions set forth in the Settlement Agreement.

Settlement here is both desirable and beneficial. Indeed, because of the settlement, Settlement Class Members will receive timely, guaranteed relief and will avoid the risk of an unfavorable judgment.

### III.    THE SETTLEMENT

The settlement's key terms are noted below.

#### A.    The Class

The Parties have agreed and stipulated that the following Class can be certified under Rule 23 for settlement purposes: all individuals residing in the United States whose Private Information was compromised in the Data Security Incident, including all those who were sent Notice. Class Members specifically excludes all persons who are directors or officers of Defendant, the Judge assigned to the Action, and that Judge's immediate family and Court staff and any Person who is found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the Data Security Incident or who pleads *nolo contendere* to any such charge. Class Members consist of approximately 229,410 individuals.

As described below, all requisite elements of Rule 23(a) and 23(b)(3) are satisfied, and provisional class certification (for settlement purposes only) should be granted.

#### B.    The Benefits to Settlement Class Members

The settlement provides for a $1,000,000 non-reversionary common fund from which Class Members may claim substantial monetary relief. The funds from this Settlement are to be used to pay Settlement Class Members who submit timely and valid Claim Forms, the costs of notice and administration, any service awards to Plaintiffs as Class Representatives, and Class Counsel's Attorneys' Fees and costs.

The Settlement provides for the following categories of relief to the Settlement Class:

1.    <u>Compensation for Out-of-Pocket Losses</u>. All Settlement Class Members may submit a claim for documented out-of-pocket losses up to $5,000.00 incurred as a direct result of the Data Security Incident. Expenses must be attested to and supported by documentation substantiating the full extent of the amount claimed. S.A. § 2.3.1.

2. <u>California Statutory Cash Payment</u>. All Settlement Class Members who are residents of California, or who resided in California at any point between November 9, 2022 and the claim filing deadline, will be entitled to an additional cash payment in the amount of $100, which may be adjusted on a *pro rata* basis should the total amount of claims exceed the Settlement Fund. To qualify for the California Statutory Cash Payment, Class Members will have to provide proof of California residency. A sworn attestation shall satisfy the proof requirement for California residency. S.A. § 2.3.3.

3. <u>Pro Rata Cash Fund Payments</u>.  All Settlement Class Members are eligible to make a claim for a cash fund payment, regardless of whether they make a claim for Out-of-Pocket Losses and/or a California Statutory Cash Payment. The *pro rata* cash fund payments will evenly distribute the net amount of the Settlement Fund, after payment of all approved claims for Out-of-Pocket Losses, California Statutory Cash Payments, Notice and Administration Expenses, and any Fee and Expenses Award, and Service Awards, to each Settlement Class Member who submits a valid claim. S.A. § 2.3.4.

**C.    Proposed Notice Administration**

The settlement details a Notice Program that provides notice to Settlement Class through (1) direct notice sent via Email or U.S. mail and (2) posted on the Settlement Website. S. A. § 5.3.3(a). Notice will also be published on the Settlement Website. *Id*. § 5.3.3(b).

**D.    Attorneys' Fees and Expenses**

Plaintiffs will also separately seek an award of attorneys' fees not to exceed one-third of the Settlement Fund ($333,333.34), plus reimbursement of their reasonable costs and litigation expenses incurred. Defendant has agreed to take no position with regard to the fees motion to the extent it does not seek an award of attorneys' fees in excess of one-third of the Settlement Fund ($333,333.34), plus reimbursement of reasonable costs and litigation expenses incurred. The Settling Parties did not discuss the payment of attorneys' fees, costs, expenses and/or service award to Plaintiffs until after the substantive terms of the Settlement Class's relief had been agreed upon

Class Counsel's fee request is well within the range of reasonableness for Settlements of this nature and size. Courts in the Ninth Circuit have found attorneys' fees awards of 1/3 to be reasonable. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming award of one-third of total recovery).

### E.    Service Awards to Named Plaintiffs

Plaintiffs in this case have been vital in litigating this matter, including providing their personal information to proposed Settlement Class Counsel. Plaintiffs have been personally involved in the case and support the Settlement. Klinger Decl., ¶ 49. Plaintiffs will separately petition the Court for awards of $2,500 for each of the four Class Representatives in recognition of the time, effort, and expense they incurred pursuing claims that benefited the Settlement Class. *See* S.A., § 9.1.

The amount requested here is presumptively reasonable and commonly awarded in settled class action cases. *See, e.g., In re Pauley*, 2020 WL 5809953, at *4 (This Court granted "class representative enhancement fees in the amount of $5,000 each to Plaintiffs," finding that amount to be "presumptively reasonable"); *Yahoo Mail Litig.*, No. 13-CV-4980, 2016 WL 4474612, at *11 (N.D. Cal. Aug. 25, 2016) ("The Ninth Circuit has established $5,000.00 as a reasonable benchmark [for service awards].").

### F.    Release

Upon entry of the Final Approval Order and the running of any time for appeal, Plaintiffs and the Settlement Class will be deemed to have "fully, finally, and forever released, relinquished, and discharged all Released Claims." S.A. § 8.1.

## IV.    ARGUMENT

### A.    The Settlement Merits Preliminary Approval

### 1.    Legal Standard

A class action may not be dismissed, compromised or settled without the approval of the court. Fed. R. Civ. Proc. 23(e). Judicial proceedings under Rule 23 have led to a defined procedure and specific criteria for settlement approval in class action settlements, described in the Manual for Complex Litigation (Fourth) (Fed. Judicial Center 2004) ("Manual") § 21.63, et seq., including preliminary

approval, dissemination of notice to class members, and a fairness hearing. Manual §§ 21.632, 21.633, 21.634. The purpose of the Court's preliminary evaluation of the settlement is to decide whether it is within the "range of reasonableness," and thus whether notice to the class of the terms and conditions of the settlement, and the scheduling of a formal fairness hearing, are worthwhile. See 4 Herbert B. Newberg, Newberg on Class Actions § 11.25, et seq., and § 13.64 (4th ed. 2002 and Supp. 2004) ("Newberg"). The Court does not have to undertake an in-depth consideration of the relevant factors for final approval. Instead, the "judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." Manual, § 21.632; see 5 James Wm. Moore, Moore's Federal Practice—Civil § 23.165[3] (3d ed.).

The decision to approve or reject a proposed settlement "is committed to the sound discretion of the trial judge[.]" See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). This discretion is to be exercised "in light of the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," which minimizes substantial litigation expenses for both sides and conserves judicial resources. See Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1238 (9th Cir. 1998) (quotations omitted); see Utility Reform Project v. Bonneville Power Admin., 869 F.2d 437, 443 (9th Cir. 1989).

Courts in this Circuit agree that the two-step process for class settlement approval begins with a low hurdle: "at the preliminary approval stage, court need only determine whether the proposed settlement is within the range of possible approval." Gamble v. Boyd Gaming Corp., No. 2:13-cv-01009-JCM-PAL, 2016 WL 3693743, at *5 (D. Nev. July 11, 2016). To make the preliminary fairness determination, courts may consider several relevant factors, including "the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status through trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; [and] the experience and views of counsel." See Hanlon, 150 F.3d at 1026. Furthermore, courts must give "proper deference to the private consensual decision of the parties," since "the court's

8

intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id*. at 1027. Thus, in considering a potential settlement, the Court need not reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute and need not engage in a trial on the merits. *Officers for Justice v. Civil Service Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982), cert. denied sub nom. *Byrd v. Civil Serv. Comm 'n,* 459 U.S. 1217 (1983).

Preliminary approval of the settlement should be granted if, as here, there are no "reservations about the settlement, such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the classes, the need for subclasses, or excessive compensation for attorneys." Manual § 21.632 at 321. Based on these standards, Plaintiffs respectfully submit that, for the reasons detailed below, the Court should preliminarily approve the proposed settlement as fair, reasonable and adequate.

The *Hanlon* factors weigh in favor of granting preliminary approval. First, the negotiations did in fact occur at arm's length, through two contested mediations, with the help of two, neutral third-party mediators who are deeply experienced with mediation of data breach class actions. Second, discovery for purposes of mediation was sufficient to educate the parties as to the weaknesses and strengths of the case. Also, proposed Class Counsel is highly experienced in this area of the law, having acted as Class Counsel in numerous successful class actions, and having won commendation for their work. And finally, at this stage, no Settlement Class Member has objected, nor is it expected that there will be many objections. In addition, the following factors weigh in favor of preliminary approval of the settlement.

## 2.    The Strength of Plaintiffs' Case

"When assessing the strength of [the] plaintiff's case, the court does not reach 'any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of this litigation.'" *Van Lith v. iHeartMedia + Entm't, Inc.*, No. 1:16-CV-00066-SKO, 2017 WL 1064662, at *11 (E.D. Cal. Mar.

20, 2017) (*quoting Adoma v. Univ. of Phoenix, Inc*., 913 F.Supp.2d 964, 975 (E.D. Cal. 2012). The court must "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Adoma*, 913 F.Supp.2d at 975.

While Plaintiffs and their counsel believe that there is evidence from which the Court could rule in favor of Plaintiffs' claims, there are mitigating factors and no guarantee. Defendant challenges whether there has been any actual misuse of the Private Information that is fairly traceable to this Data Security incident and any actual injury to Plaintiffs or class members. Accordingly, there is a real issue as to whether Plaintiffs will ever be able to prove damages. Additionally, due to individualized issues related to harm resulting from the breach, there is a significant risk that a class would never be certified, were Plaintiffs' motion opposed. Klinger Decl. ¶ 39. Where a court determines that a claim may have "some measure of merit," but that it also faces inherent weaknesses, the court should find that the "strength of Plaintiff's case" factor "weighs in favor" of approval of the settlement. *Van Lith*, 2017 WL 1064662, at *11.

### 3.    Risk, Expense, Complexity, and Likely Duration of Further Litigation

In assessing the degree of risk of continued litigation, "the court evaluates the time and cost required." *Adoma*, 913 F.Supp.2d at 976. "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Id*. (quoting *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 526 (C.D. Cal. 2004)). "The parties . . . save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something that they might have won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624 (quoting *United States v. Armour & Co.*, 402 U.S. 673, 681–82 (1971)).

The risk and expense of continued litigation is plain; absent settlement, the Parties would be required to continue litigation, which necessarily would involve significant discovery, a contested motion for certification, and other dispositive motions such as a motion for summary judgment and possible appeals. All told, the ultimate recovery might be of no greater value—or of lesser value—to that in the

Agreement. Moreover, the process only becomes more complex over a longer time period, as new issues may emerge through discovery or simply determinations relating to case strategy. Accordingly, this factor clearly weighs in favor of approval. Klinger Decl. ¶ 40; *see, e.g., Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013) (concluding that this factor favored approval where "there remained significant procedural hurdles for the putative class to confront, including certification" and "there were significant risks in continued litigation and no guarantee of recovery").

### 4.    Relief Offered in Settlement

The relief offered in a settlement is assessed as a whole, "complete package" for overall fairness. *DIRECTV, Inc.*, 221 F.R.D. at 527 (quoting *Officers for Justice*, 688 F.2d at 628). Indeed, it is "well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id*. (citing *Linney*, 151 F.3d at 1242).

Here, the relief includes a $1 million non-reversionary Settlement Fund, from which Settlement Class Members may claim up to $5,000 in documented out-of-pocket losses, a $100 California statutory claims payment, and a pro rata cash payment. While a larger award is "theoretically possible, 'the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.'" *Barbosa*, 297 F.R.D. at 447 (quoting Linney, 151 F.3d at 1242*); see also Hanlon*, 150 F.3d at 1027 (the fact that "the settlement could have been better . . . does not mean the settlement presented was not fair, reasonable, or adequate."). Accordingly, this factor weighs in favor of approval of the settlement.

### 5.    Arm's Length, Non-Collusive, Negotiated Resolution

This Circuit has held that it puts "a good deal of stock in the product of arms-length, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (citing Hanlon, 150 F.3d at 1027; Officers for Justice, 688 F.2d at 625). Critically, there is "[a]n initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011) (emphasis added), supplemented, No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

1     Here, counsel for the Parties have separately initiated preliminary review and investigation of the

2     applicable law and facts pertaining to the alleged claims, potential defenses thereto, the damages claimed

3     at issue, and potential exposure. The Parties engaged in vigorous, contested motions practice, and

4     considerable formal discovery that included discovery disputes. Further, the Parties engaged in two arm's

5     length mediations with two highly experienced, neutral mediators, whose guidance and experience aided

6     in reaching the settlement. The adversarial, non-collusive and arm's-length communications between the

7     Parties' counsel considered issues including, but not limited to, the following: (1) certification of a

8     settlement class, and (2) monetary remuneration for Settlement Class Members. The resulting Agreement

9     is the product of hours of such arm's length negotiations between the Parties, which allows for an initial

10    presumption of fairness. Klinger Decl. ¶ 41.

11    **6.    Experience and Views of Counsel and Adequate Representation of the Settlement**
      **Class**

12

13    "In considering the adequacy of the terms of a settlement, the trial court is entitled to, and should,

14    rely upon the judgment of experienced counsel for the parties." *Van Lith*, 2017 WL 1064662, at *13

15    (citing *Barbosa*, 297 F.R.D. at 447. "Great weight is accorded to the recommendation of counsel, who

16    are the most closely acquainted with the facts of the underlying litigation." *Id.* (quoting *Adoma*, 913

17    F.Supp.2d at 977 (internal citation omitted). Accordingly, "absent fraud, collusion, or the like," the Court

18    "should be hesitant to substitute its own judgment for that of counsel." *Id*. (citing *DIRECTV, Inc*., 221

19    F.R.D. at 528).

20    Class Counsel and Defendant's counsel have extensive experience in litigating consumer class

21    actions, specifically data breach class actions. Klinger Decl. ¶ 42. They understood and appreciated the

22    defenses and position of Eureka but believed Plaintiffs would ultimately succeed. Considering the

23    Parties' strongly divergent views, and their awareness of the burdens of proof necessary to establish

24    liability for the claims and the potential challenges to bringing a class certification motion, the Parties

25    were able to negotiate a fair settlement, taking into account the costs and risks of continued litigation.

26    The Parties have produced a result that they believe to be in their respective best interests. The Parties

also have taken into account the uncertainty and risk of the outcome of further litigation, and the difficulties and delays inherent in such litigation. Plaintiffs also are aware of the burdens of proof necessary to establish liability for the claim asserted in the action, the defenses thereto, the difficulties in establishing damages for Plaintiffs, and the potential challenges to certifying a class where the motion disputed. Klinger Decl. ¶ 43.

### 7.    The Settlement Has No Obvious Deficiencies

Furthermore, because the Settlement Agreement has no obvious deficiencies, preliminary approval is proper. *See Mora v. Cal West Ag Services, Inc*., No. 1:15-cv-01490-LJO-EPG, 2019 WL 2084725, at *3 (E.D. Cal. 2019), report and recommendation adopted, 2019 WL 3760402 (E.D. Cal. 2019) (citing Newberg on Class Actions § 13:13 (5th ed. 2014)) ("The purpose of the initial review is to ensure that an appropriate class exists and that the agreement is non-collusive, without obvious deficiencies, and within the range of possible approval as to that class.") (emphasis added). No such obvious deficiencies are present here. The settlement includes a sizeable amount of monetary relief for distribution to the Settlement Class Members who make claims, remedying the harm suffered by Settlement Class Members. Klinger Decl. ¶ 44.

### 8.    The Proposed Method of Distributing Relief and Processing Claims Is Adequate

The distribution plan for the Settlement Fund, including plans to process claims, are also more than adequate. Plaintiffs have identified an experienced Claims Administrator who will handle claims processing and payment of the funds to the Settlement Class Members. The claims process is the most rational and reasonable means for distributing the funds to the Settlement Class Members. Klinger Decl. ¶ 45, Ex. 1 (Settlement Agreement).

Proposed settlements are not judged against a hypothetical or speculative measure of what might have been achieved, as litigation is, by its nature, uncertain, and "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Linney*, 151 F.3d at 1242. The settlement achieves a fundamentally fair, adequate, and reasonable resolution of all relevant claims.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9.      **The Agreement Treats Settlement Class Members Equally**

The Agreement provides that all Settlement Class Members are eligible to receive both the documented loss payment and a pro rata cash payment. These are benefits offered equally to all Settlement Class Members. Klinger Decl. ¶ 46, S.A § 2. All Settlement Class Members have an equal opportunity to make their case for reimbursement. All Settlement Class Members will also have the opportunity to make a claim for a pro rata cash payment. And while the California Class Members may make an additional claim, this is appropriate given the superior statutory rights afforded California residents (including statutory damages of up to $750 per person for a successful CCPA claim). Accordingly, the settlement treats all Class Members equally.

B.      **The Settlement Class Should Be Certified**

1.      **Legal Standard**

In reviewing a class action settlement, a "district court must assess whether a class exists." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). The fundamental question "is not whether . . . plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). The Settlement Class satisfies the Rule 23(a) and 23(b)(3) requirements for certification.

2.      **Plaintiffs' Claims Satisfy the Rule 23 Requirements for Certification**

For the purposes of the settlement, the Parties agree that these criteria are satisfied.

a.      **The Settlement Class Is Ascertainable**

Although not specified in Rule 23, courts imply a prerequisite that the proposed class be ascertainable. *See, e.g., Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1302 (D. Nev. 2014). "The definition must be precise, objective, and presently ascertainable." *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, No. 2:06-cv-00225-PMP-PAL, 2008 WL 3179315, at *20 (D. Nev. June 20, 2008) (citation omitted). Ascertainability may be satisfied if it is "administratively feasible" for the court to determine whether a particular individual is a member, though this is not a prerequisite to certification. *Briseno v. ConAgra Foods, Inc.*, 944 F.3d 1121 (9th Cir. 2017). Here, the Settlement Class is

1   ascertainable. Eureka has within its possession the identities of those individuals impacted by the Data

2   Breach as it sent the notices of the Data Security Incident to them. Klinger Decl. ¶ 47. Therefore, the

3   ascertainability requirement is met.

4        **b.    The Settlement Class Is Numerous**

5        Rule 23(a)(1) requires that a class include so many members that joinder of all would be

6   impracticable. "Impracticability does not mean 'impossibility,' but only the difficulty or inconvenience

7   of joining all members of the class.'" *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14

8   (9th Cir. 1964) (citation omitted). Here, the Settlement Class is estimated to consist of 229,410 Settlement

9   Class Members who were identified by Eureka as among those individuals impacted by the Data Security

10  Incident. Klinger Decl. ¶ 48. Thus, the Settlement Class is sufficiently numerous.

11       **c.    There Are Common Questions of Law and Fact**

12       Rule 23(a)(2) requires a showing that there are questions of law or fact common to the class. This

13  rule "has been construed permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998),

14  overruled on other grounds by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). "[A] common

15  question must be of such a nature that it is capable of classwide resolution—which means that the

16  determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims

17  in one stroke." *Dukes*, 564 U.S. at 350 (quotation omitted). Commonality is a permissive requirement,

18  and "not all questions of fact and law need be common to satisfy the rule." *Hanlon*, 150 F.3d at 1019.

19  The "existence of shared legal issues with divergent factual predicates is sufficient, as is a common core

20  of salient facts coupled with disparate legal remedies within the class." *Id.* at 1019–20.

21

22       Commonality is satisfied here because the factual and legal issues are the same for the entire

23  Settlement Class, including Plaintiffs. Plaintiffs' claims stem from a single course of conduct which

24  Eureka engaged in with respect to the PII of each and every one of the Settlement Class Members.

25  Further, all Settlement Class Members suffered from, and seek redress for, the same alleged injuries in

26  the form of time lost mitigating the resulting harm from the Incident, out-of-pocket costs mitigating the

27  resulting harm from the Data Breach, the loss of value of their PII, and the deprivation of their benefit of

28

the bargain with Eureka. These key issues are entirely common to the Settlement Class and if the case proceeded, would be resolved based on common facts and evidence. Klinger Decl. ¶ 49.

### d. Plaintiffs' Claims Are Typical

Rule 23(a)(3) requires that the class representatives' claims are typical of the class. "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.* "Under the 'permissive standards' of Rule 23(a)(3), 'representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Hanlon*, 150 F.3d at 1020. Plaintiffs provided their PII to Eureka and their PII was affected by the Data Breach and, thus, they allege that they were subject to the same policies and practices as other similarly situated Settlement Class Members. Klinger Decl. ¶ 50. Accordingly, typicality is easily satisfied.

### e. Plaintiffs and Settlement Class Counsel Are Adequate Representatives

Rule 23(a)(4) requires that the named plaintiffs be able fairly and adequately to protect the interests of the class. This determination turns on just two questions: "(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003); *Santoro v. Aargon Agency, Inc.*, 252 F.R.D. 675, 682 (D. Nev. 2008). Both components are met here.

Plaintiffs are adequate class representatives because they have actively pursued this litigation on behalf of the Settlement Class Members and share an identical interest in establishing Eureka's liability and obtaining a suitable remedy for the Data Breach. Plaintiffs have no conflicts, and Plaintiffs have, with counsel, litigated this case and diligently reviewed the settlement terms, showing their dedication.

Plaintiffs' willingness to serve as representatives demonstrates their serious commitment to bringing about the best results possible for the Settlement Class. Klinger Decl. ¶ 51.

Settlement Class Counsel are adequate to represent the Settlement Class's interests and should be appointed Settlement Class Counsel. In retaining these firms Plaintiffs employed counsel who are "qualified, experienced and able to conduct the proposed litigation." *Hester v. Vision Airlines, Inc.*, No. 2:09-cv-00117, 2009 WL 4893185, at *5 (D. Nev. Dec. 16, 2009) (internal quotation). With a litany of experience in class actions and other complex litigation, including data breach litigation, that proposed Settlement Class Counsel bring, there can be no doubt that they are adequate to represent the Settlement Class here. Klinger Decl. ¶ 52; Klinger Resume and Milberg Firm Resume, Emery Reddy Firm Resume; attached as Exhibits 1-2 to the Klinger Declaration,.

**f.      The Settlement Class Also Meets the Rule 23(b)(3) Requirements**

This action is also well-suited for certification under Rule 23(b)(3) because questions common to the Settlement Class Members predominate over questions affecting only individual Class Members, and class action treatment provides the best method for the fair and efficient resolution of the Settlement Class's claims. Indeed, Eureka does not oppose class certification for the purpose of effectuating the proposed settlement. When addressing the propriety of certification, the Court should note that, in light of the settlement, trial will now be unnecessary, and that the manageability of the Class for trial purposes and need to calculate damages is not relevant to the Court's inquiry. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Hanlon*, 150 F.3d at 1021–23.

**i.      Predominance Is Satisfied**

A class action is appropriate under Rule 23(b)(3) if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," there is clear justification for class treatment. *Local Joint Executive Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc*., 244 F.3d 1152, 1162 (9th Cir. 2001).

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (citing *Amchem*, 521 U.S. at 622). If common questions "present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," then "there is clear justification for handling the dispute on a representative rather than on an individual basis," and the predominance test is satisfied. *Id*. at 1022. There is no definitive test for determining whether common issues predominate, however, in general, predominance is met when there exists generalized evidence which proves or disproves an [issue or] element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position. The main concern is "the balance between individual and common issues." *In re Wells Fargo Home Mortg*., 571 F.3d 953, 959 (9th Cir. 2009).

Common issues predominate here. As explained in the commonality section above, the evidence necessary to establish Plaintiffs' claims is common to both Plaintiffs and the Settlement Class Members—they would all seek to prove that Eureka's liability for the improper and/or inadequate maintenance and safekeeping of the PII in its possession and control such that the data breach that resulted in the unauthorized disclosure of Plaintiffs' and Class Members' PII, and resulting injuries, is fairly traceable to Eureka's uniform policies and procedures affecting Plaintiffs and Class Members' alike. Klinger Decl. ¶ 53.

### ii.    Class Treatment Is Superior

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am. LLC,* 617 F.3d 1168, 1175 (9th Cir. 2010). Rule 23(b)(3)'s non-exclusive factors are: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action."

All of these factors are present here as it is clear that managing these disputes in a single class

action before a single judge is preferable and more manageable than to require hundreds of thousands of consumers to each bring individual actions where the filing fees alone would likely exceed the value of any potential recovery. The more likely outcome in that situation would be the absence of any actions and no remedy being provided to any Class Members. Klinger Decl. ¶ 54.

## V.    CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that this Court enter an order preliminarily approving the settlement and certifying the Settlement Class for settlement purposes.

Dated: December 19, 2025                    Respectfully Submitted,

                                            */s/Gary M. Klinger*
                                            Gary M. Klinger (*pro hac vice*)
                                            **MILBERG PLLC**
                                            227 W. Monroe Street, Suite 2100
                                            Chicago, IL 60606
                                            gklinger@milberg.com

                                            M. Anderson Berry, Esq. (*pro hac vice*)
                                            Gregory Haroutunian, Esq. (*pro hac vice*)
                                            **EMERY | REDDY, PC**
                                            600 Stewart Street, Suite 1100
                                            Seattle, WA 98101
                                            916.823.6955 (Tel)
                                            206.441.9711 (Fax)
                                            *anderson@emeryreddy.com*
                                            *gregory@emeryreddy.com*

                                            *Interim Co-Lead Counsel for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 19th day of December 2025, a true copy of the foregoing **NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT,** was filed via the Court's CM/ECF System and electronically served on all parties in interest.

*/s/Gary M. Klinger*
Gary M. Klinger (*pro hac vice*)
**MILBERG PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
gklinger@milberg.com